T.C. Memo. 2016-88

UNITED STATES TAX COURT

GARY I. TERRY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13062-14L.                    Filed May 3, 2016.

Gary I. Terry, pro se.

<u>John D. Ellis</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The parties have filed cross-motions for summary judgment under Rule 121. There exist no disputes of material fact, and we agree with respondent's position. We will accordingly grant his motion for summary judgment and deny petitioner's.

## Background

The following facts are derived from the parties' pleadings and motions, including the attached affidavits and exhibits. See Rule 121(b). Petitioner resided in North Carolina when he filed his petition.

During 1996 and 1997 contracting officers at the General Services Administration (GSA) determined that petitioner had been overpaid on Government contracts and demanded that he pay restitution. Petitioner alleges that the GSA committed errors in making its determination.[2] The GSA, through the Department of Justice, notified the IRS that petitioner owed "a past-due legally enforceable debt,"

---

[2]The GSA's claim for restitution arose out of petitioner's involvement with SCAT, Inc., his wholly owned corporation. Petitioner's involvement with this entity has been well documented, and he has pursued numerous lawsuits seeking redress against (among others) the GSA, the Small Business Administration, various Department of Justice attorneys, various bankruptcy trustees, and at least one Federal judge. See, e.g., Terry v. SBA, 699 F. Supp. 2d 49, 50-52 (D.D.C. 2010) (noting petitioner's various unsuccessful attempts to relitigate his GSA debt); Terry v. Sparrow, 328 B.R. 450, 453-454 (Bankr. M.D.N.C. 2005) (describing factual background of petitioner's debt).

[*3] sec. 6402(d)(1), and requested that the IRS collect this debt through the Treasury Offset Program.

Petitioner timely filed his Federal income tax return for 2011 showing an overpayment of $1,745. Rather than refunding this sum to petitioner, the IRS used it to offset in part his GSA debt. On January 28, 2013, petitioner filed an amended return for 2011, reporting an additional tax liability of $550; he remitted no payment with this amended return. The IRS accepted petitioner's amended return and assessed the additional tax shown thereon plus applicable penalties and interest. Because his original overpayment had already been applied to reduce the GSA debt, the tax liability reported on his amended return gave rise to a balance due.

In an effort to collect this unpaid tax liability, the IRS in September 2013 issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioner timely requested a CDP hearing, stating that he "did not owe all or part of the taxes." He did not seek a collection alternative and did not allege inability to pay the balance due. A settlement officer from the IRS Appeals Office (SO1) was assigned to his case.

On February 4, 2014, petitioner called SO1 and asked for a face-to-face hearing; she informed him that he needed to make this request in writing. He also asked that she provide him a signed copy of the document authorizing the offset of

[*4] his 2011 overpayment; she replied that she could not obtain this document and suggested that he might wish to file a Freedom of Information Act request. Petitioner did not dispute the tax shown as due on his amended return but insisted that the GSA debt was invalid because of official misconduct.

SO1 determined that she had no authority to reverse the offset of petitioner's original overpayment because that offset was completed before petitioner's amended return was filed. On February 5, 2014, she sent petitioner a letter: (1) proposing a telephone CDP hearing on March 20; (2) reminding petitioner to file a written request for a face-to-face hearing if he wished one; and (3) asking petitioner to supply a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, if he desired a collection alternative. In this letter, SO1 offered an installment agreement under which petitioner would make monthly payments of $25. (Petitioner never responded to this offer.)

On February 25, petitioner called SO1, repeated his request for a copy of the document authorizing the offset, and asked that his CDP hearing be reassigned to another settlement officer. Two days letter, another settlement officer (SO2) sent petitioner a letter stating that: (1) the case had been reassigned to her; (2) she could not reverse the offset because the amended return was received after the

**[*5]** offset occurred; and (3) the telephone CDP hearing was still scheduled for March 20. On March 10, petitioner sent SO2 a facsimile reiterating his request for a face-to-face hearing.

SO2 called petitioner on March 20 for the scheduled telephone hearing. He repeated his assertions that the GSA debt was invalid and asked SO2 to reschedule the hearing so she could consider that claim. SO2 explained that this was not a valid reason for rescheduling the hearing because she had no authority to reconsider the validity of the GSA debt. Petitioner told SO2 that he did not wish to discuss the case further; asked that she issue him a final notice of determination; and ended the call.

Two weeks later SO2 responded to petitioner's request for a face-to-face hearing, asking him to provide within 14 days a list of the issues he wished to discuss. When petitioner failed to respond to this letter, SO2 closed the case and sent him, on May 12, 2014, the notice of determination underlying this case. Petitioner timely sought review in this Court, and on August 6, 2015, respondent moved for summary judgment. On September 8, 2015, petitioner responded to this motion and filed a cross-motion for summary judgment.

**[\*6]**                                        <u>Discussion</u>

A.     <u>Summary Judgment and Standard of Review</u>

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. We may grant summary judgment when there is no genuine dispute concerning any material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Elec. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002). The parties agree on all questions of material fact and have expressed that consensus by filing cross-motions for summary judgment. We conclude that the question presented is appropriate for summary adjudication.

Where (as here) there is no challenge to the amount of a taxpayer's underlying tax liability,[3] we review the IRS determination for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists when

---

[3]Petitioner did not challenge during the CDP hearing or in the petition his underlying tax liability for 2011. He is thus precluded from disputing that liability here. See <u>Thompson v. Commissioner</u>, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Where a taxpayer in a CDP hearing disputes an alleged misapplication of a credit or overpayment, a de novo standard of review has sometimes been applied on the theory that this represents a challenge to the taxpayer's underlying tax liability. See <u>Dixon v. Commissioner</u>, 141 T.C. 173, 184 & n.6 (2013) (collecting cases). It is by no means clear that this theory would apply where the IRS offsets an overpayment against a nontax debt. In any event, we would reach the same result if we adopted a de novo standard because (as explained below) we lack jurisdiction to review such offsets.

**[*7]** a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

B.   Analysis

In deciding whether the SO abused her discretion in sustaining the notice of intent to levy, we consider whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).  It is clear from our review of the record that SO2 conducted a thorough review of the transcripts of petitioner's account and verified that the requirements of applicable law and administrative procedure were met.

Section 6402(d)(1)(A) provides that, "[u]pon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt * * * the Secretary shall * * * reduce the amount of any overpayment payable to such person by the amount of such debt."  The duty imposed upon the Commissioner by this statute is mandatory and overrides any request by the taxpayer that the over-

[*8] payment be credited or refunded.  See Jordan v. Commissioner, T.C. Memo. 2006-95, 91 T.C.M. (CCH) 1129, 1132, aff'd, 226 F. App'x 15 (1st Cir. 2007). Because the Secretary "is legally required" to make this offset, he cannot review the validity of an agency debt of which he has been properly notified.  Wooten v. Commissioner, T.C. Memo. 2003-113, 85 T.C.M. (CCH) 1193, 1196.  Section 6402(g) further provides that "[n]o court of the United States shall have jurisdiction * * * to restrain or review a reduction authorized" by section 6402(d). To the extent petitioner has any claim for recovery, therefore, he must make that claim to the GSA.  See sec. 6402(g) (noting that the bar against judicial review "does not preclude any * * * action against the Federal agency * * * to which the amount of such reduction was paid"); Wooten, 85 T.C.M. (CCH) at 1196.

Petitioner does not dispute that the IRS received a proper notice of "a past-due legally enforceable debt."  Sec. 6402(d)(1).  His sole argument is that alleged procedural defects render the GSA debt invalid.  Because the IRS lacked the authority to review the validity of that debt, and because this Court lacks jurisdiction to review the propriety of the Commissioner's offset, petitioner's argument is beside the point.

Petitioner repeatedly requested a face-to-face CDP hearing, and SO1 and SO2 reasonably responded to these requests.  The regulations provide that a "CDP

[*9] hearing may, but is not required to, consist of a face-to-face meeting." Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. As we have often held, a face-to-face CDP hearing is not required. E.g., Katz v. Commissioner, 115 T.C. 329, 337-338 (2000); Williamson v. Commissioner, T.C. Memo. 2009-188. A settlement officer does not abuse her discretion in denying a face-to-face hearing if she determines that it would not be productive because the taxpayer's contentions are frivolous or groundless. Stockton v. Commissioner, T.C. Memo. 2009-186, 98 T.C.M. (CCH) 103, 107. Petitioner failed to identify any issue that he wished to discuss at a face-to-face hearing--apart from his improper challenge to the validity of the GSA debt--and it was not an abuse of discretion to deny his request.

SO1 determined that petitioner might be eligible for an installment agreement and actually proposed one. But petitioner never responded to this offer, and he did not request a collection alternative from SO2. A settlement officer does not abuse her discretion by refusing to consider a collection alternative where (as here) the taxpayer fails to respond to an offer or place a counteroffer on the table. See McLaine v. Commissioner, 138 T.C. 228, 243 (2012); Stanwyck v. Commissioner, T.C. Memo. 2012-180, 103 T.C.M. (CCH) 1955, 1959.

**[\*10]** Finding no abuse of discretion in any respect, we conclude that respondent is entitled to judgment as a matter of law sustaining the notice of determination issued May 12, 2014. To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.